UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOYCEE D. BOWEN,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | Case No. EDCV 09-0069-GHK (JEM)<br><br>MEMORANDUM OPINION AND ORDER REVERSING DECISION OF COMMISSIONER AND REMANDING FOR PAYMENT OF BENEFITS |

**PROCEEDINGS**

On January 12, 2009, Joycee D. Bowen ("Plaintiff" or "Claimant"), proceeding *in forma pauperis*, filed a complaint seeking review of the decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for both Social Security disability insurance benefits and Supplemental Social Security income. The Commissioner filed an Answer on April 22, 2009.

On July 27, 2009, the parties filed a Joint Stipulation ("JS"). The matter is now ready for decision.

After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision should be reversed and this case should be remanded for an immediate award of benefits.

**BACKGROUND**

Plaintiff is a 49 year old female who claims disability because of pain and fatigue that render her unable to work. (AR 85; JS 2:1.) Plaintiff alleges an onset date of February 10, 2004. (AR 85.)

Plaintiff's claims were denied initially on May 26, 2006, and upon reconsideration on March 1, 2007. (AR 32.) Claimant filed a timely request for hearing on April 27, 2007. (Id.) She appeared and testified at a hearing held before an Administrative Law Judge ("ALJ") on July 31, 2008, in Orange, California. (Id.)

The ALJ issued an unfavorable decision on August 29, 2008. (AR 32-40.) The ALJ concluded that Claimant has not been under a disability within the meaning of the Social Security Act from February 10, 2004, through the date of the decision. (AR 39.) The ALJ determined that the Claimant suffers from the severe impairments of fibromyalgia, chronic ear infections, and chronic arthralgia. (AR 34.) However, the ALJ found that Claimant had the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). (AR 35.) In particular, the ALJ found that Claimant is capable of performing her past relevant work as a cashier. (AR 39.)

Plaintiff timely filed a request for review of the ALJ's unfavorable decision, which was denied by the Appeals Council on November 24, 2008. (JS 2.)

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues that Plaintiff is raising as grounds for reversal and remand are as follows:

1. Whether the ALJ properly considered all of the relevant medical evidence of record in rendering his unfavorable decision. (JS 3.)

2. Whether the ALJ properly considered Plaintiff's subjective complaints and properly assessed Plaintiff's credibility. (JS 3.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "'more than a mere scintilla' but less than a preponderance." Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotations and citations omitted). This Court must review the record as a whole and consider adverse as well as supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

**DISCUSSION**

The Court concludes that the ALJ's determination that Plaintiff is not disabled is unsupported by substantial evidence. The ALJ correctly concluded that Claimant's mental impairments do not prevent her from doing her past cashier work. However, the ALJ erred in concluding that Claimant's chronic pain and fatigue do not preclude her from substantial gainful activity.

**A.     The Sequential Evaluation**

The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine "whether the claimant is presently engaging in substantially gainful activity." Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging in substantially gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987). Second, the ALJ must determine whether the claimant has a severe impairment or combination of impairments. Parra, 481 F.3d at 746. An impairment is not severe if it does not significantly limit the claimant's ability to work. Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). The ALJ, however, must consider the combined effect of all the claimant's impairments on his or her ability to function, regardless of whether each alone is sufficiently severe. Id. Also, the ALJ must consider the claimant's subjective symptoms in determining severity. Id.

Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in Appendix I of the regulations. Parra, 481 F.3d at 746. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. Bowen, 482 U.S. at 141.

Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work. Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001). If the claimant cannot perform his or her past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

The claimant bears the burden of proving steps one through four, consistent with the general rule that, at all times, the burden is on the claimant to establish his or her entitlement to benefits. Parra, 481 F.3d at 746. Once this prima facie case is established

by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity. Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).

**B.    The ALJ Correctly Concluded That Claimant's Mental Impairments Do Not Prevent Her From Engaging In Substantial Gainful Activity**

The ALJ found that Claimant does not suffer from any severe mental impairment. (AR 38.) There is substantial evidence to support the ALJ's conclusion.

Plaintiff's primary complaint is that she suffers from pain and fatigue that render her unable to work. (JS 2.) Because of increasing depression due to her continuing pain and fatigue, the ALJ ordered two consulting psychiatric evaluations. (AR 293.)

Dr. Rodriguez concluded that, despite depression and past alcohol abuse in total remission, "from a psychiatric standpoint, the Claimant is stable without any antidepressants." (AR 243.) His functional assessment based on his psychiatric examination is that Ms. Bowen is slightly limited in her ability to work (AR 243-44.) His Residual Functional Capacity Assessment ("RFC") indicated occasional exertional and postural limitations. (AR 247-48.) He found Plaintiff to be "genuine and truthful," with no "exaggeration or manipulation." (AR 241.)

Dr. Rodriguez did not purport to examine the impact of Claimant's pain and fatigue on her ability to work. He simply accepted the diagnoses of rheumatology specialists at Riverside County Regional Medical Center ("RCRMC") who treated Ms. Bowen. His Axis III diagnostic impression was "Per Specialist." (AR 242.) Dr. Rodriguez also noted that there were no psychiatric records for review (AR 238), indicating that his focus was Plaintiff's mental health, not her pain and fatigue. There is no evidence that Dr. Rodriguez ever reviewed the extensive medical evidence regarding Plaintiff's pain and fatigue, which he never discusses in any event.

Dr. Jordan concluded that Plaintiff suffered from mild depressive disorder. (AR 298). Dr. Jordan, however, also concluded that "[t]he Claimant's functioning did not appear to be impaired by any ongoing psychiatric problems." (AR 299.) He further noted that "[p]robable work functioning from a psychiatric viewpoint would be within normal limits." (Id.) He stated

that the Claimant appeared to "significantly embellish symptomology of present illness." (AR 295.)

Dr. Jordan, however, also did not purport to evaluate the Claimant's pain and fatigue or assess its impact on her ability to work. He acknowledged and accepted that Plaintiff has "fibromyalgia, chronic fatigue syndrome, carpal tunnel syndrome, chronic recurrent ear infections." (AR 297.) His Axis III diagnoses were "chronic pain, fibromyalgia, chronic fatigue syndrome, chronic recurrent ear infections with surgery, and carpal tunnel syndrome." (AR 299.) He observed that there were no mental health records in the chart (AR 295), indicating that his focus was psychiatric, not medical. There is no evidence that Dr. Jordan reviewed the extensive medical records regarding Plaintiff's pain and fatigue, which he never discusses in any event.

Plaintiff, moreover, consistently and repeatedly told psychiatrists and others that her problem is not depression, but pain. (AR 238.) She consistently has refused mental health treatment and medications for depression. (AR 239, 243, 297.) She is despondent at times but blames it on the pain. (AR 241.)

Thus, there is no basis for disturbing the ALJ's conclusion that Plaintiff does not suffer from a severe mental illness that would preclude her from engaging in substantial gainful activity.

**C. The ALJ Erred In Concluding That Claimant's Pain and Fatigue Were Not Severe Enough To Be Disabling**

Unfortunately, the ALJ's decision focuses primarily on the psychiatric assessments of Plaintiff's depression and mental impairments, which are of secondary concern. The decision gives but two paragraphs of analysis to the paramount issues of pain and fatigue that prompted Claimant's application for benefits. The ALJ's decision that Plaintiff's pain and fatigue are not severe enough to be disabling is unsupported by substantial evidence or legally adequate reasons and marred by procedural and substantive errors.

///

///

### 1. Plaintiff's Pain and Fatigue

Since and even before the onset date of February 10, 2004, Plaintiff repeatedly has sought medical attention for pain and fatigue. The RCRMC medical records are extensive, consisting of 152 pages. (AR 174-237, 269-91, 301-69.) She made at least 30 visits to the rheumatology clinic at RCRMC. (Id.) During her visits for treatment, Plaintiff consistently complained of pain and fatigue accompanied by multiple tender painful areas, stiffness, numbness, muscle spasms, joint pain, swelling, dry mouth, headaches, and inability to sleep. (See, e.g., AR 174 (muscle spasms, severe pain, multiple areas of stiffness and swelling); 177 (pain); 178 (joint pain); 179 (multiple painful areas); 180 (arthritis, tender over multiple areas); 189 (joint pain, muscle spasms, insomnia, tender points); 194 (muscle spasms, joint pain); 197 (joint/muscle pain, spasms, swelling); 220 (chronic fatigue); 223 (joint pain); 275 (shoulder pain, severe joint pain, swelling); 279 (numbness); 280 (pain); 281 (pain, fatigue, tender points, swelling, insomnia); 292 (tender points, muscle spasms, joint popping, severe pain, multiple areas of stiffness); 341 (pain); 350 (pain); 353 (pain); 355 (tender points, pain); 360 (pain, numbness); 362 (pain)). On two occasions, Plaintiff had to cease employment after several months, once as a cashier and later as a caregiver, because of pain and fatigue. (AR 101, 240, 296.)

The rheumatology physicians at RCRMC repeatedly diagnosed Ms. Bowen with fibromyalgia, chronic fatigue syndrome ("CFS"), chronic pain syndrome ("CPS"), chronic arthralgia, parasthesia, and arthritis. (See, e.g., AR 174 (probable fibromyalgia, chronic fatigue syndrome, chronic pain syndrome); 177 (likely fibromyalgia); 180 (arthritis, myalgias); 186 (arthritis, myalgias); 190 (pain syndrome); 193 (pain syndrome, possible fibromyalgia); 196 (pain syndrome, possible fibromyalgia); 221 (chronic fatigue); 268 (chronic arthralgia); 269 (chronic arthralgia); 270 (chronic arthralgia); 280 (chronic pain, FMS-fibromyalgia); 281 (FMS (fibromyalgia syndrome), chronic pain, CFS); 292 (probably fibromyalgia, CFS, CPS); 293 (chronic arthralgia); 297 (fibromyalgia, CFS); 304 (chronic arthralgia); 307 (fibromyalgia); 309 (chronic pain syndrome); 310 (chronic fatigue,

1  fibromyalgia); 341 (possible fibromyalgia); 350 (fibromyalgia, parasthesia); 353
2  (fibromyalgia); 354 (parasthesia); 355 (fibromyalgia); 360 (FMS, parasthesia); 362 (FMG,
3  parasthesia); 363 (parasthesia); 369 (parasthesia)).

4  RCRMC physicians repeatedly prescribed a series of medications to treat Plaintiff's
5  pain, fatigue, and other symptoms, including Clinoril, Naprosyn, Naproxen, Neurontin,
6  Tramadol, Elavil, Effexor, Trazadine, Vicodin, Tylenol, Motrin. (AR 135, 169, 173, 179,
7  297.) On one occasion, an RCRMC physician did a Physical Assessment and
8  recommended rest and no work for six months. (AR 220.)

9  Ninth Circuit cases have determined that fibromyalgia can be disabling. In <u>Benecke
10 v. Barnhart</u>, 379 F.3d 587, 589-90 (9th Cir. 2004), the Ninth Circuit described fibromyalgia
11 as follows:

> Benecke suffers from fibromyalgia, previously called fibrositis, a
> rheumatic disease that causes inflammation of the fibrous connective
> tissue components of muscles, tendons, ligaments, and other tissue.
> *See, e.g., Lang v. Long-Term Disability Plan of Sponsor Applied Remote
> Tech, Inc.*, 125 F.3d 794, 796 (9th Cir. 1997); *Brosnahan v. Barnhart,*
> 336 F.3d 671, 672 n. 1 (8th Cir. 2003). Common symptoms, all of which
> Benecke experiences, include chronic pain throughout the body, multiple
> tender points, fatigue, stiffness, and a pattern of sleep disturbance that
> can exacerbate the cycle of pain and fatigue associated with this
> disease. *See Brosnahan*, 336 F.3d at 672 n. 1; *Cline v. Sullivan*, 939
> F.2d 560, 563 (8th Cir. 1991). Fibromyalgia's cause is unknown, there is
> no cure, and it is poorly understood within much of the medical
> community. The disease is diagnosed entirely on the basis of patients'
> reports of pain and other symptoms. The American College of
> Rheumatology issued a set of agreed-upon diagnostic criteria in 1990,
> but to date there are no laboratory tests to confirm the diagnosis. *See*

1     *Jordan v. Northrop Grumman Corp.*, 370 F.3d 869, 872 (9th Cir. 2004);

2     *Brosnahan*, 336 F.3d at 672 n. 1.

3 Id.; see also Harman v. Apfel, 211 F.3d 1172 (9th Cir. 2000) (reversing ALJ decision
4 denying benefits for fibromyalgia); Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991)
5 (upholding benefits for fibrositis, now known as fibromyalgia). Jordan v. Northrop Grumman
6 Corp., 370 F.3d 869, 877 (9th Cir. 2003), a case in which benefits were denied for
7 fibromyalgia, recognized that the accepted diagnostic test is that Plaintiff must have pain in
8 11 of 18 tender points. See also Rollins v. Massanari, 261 F.3d 853, 855 (9th Cir. 2001) (11
9 of 18 tender points). In this case, RCRMC physicians on two occasions conducted the
10 indicated test for fibromyalgia. Plaintiff had 18 of 18 tender points on one occasion and 12
11 of 12 on another occasion. (AR 281, 292.)

12     Cases in the Ninth Circuit have found chronic fatigue syndrome ("CFS") to be
13 disabling. Reddick v. Chater, 157 F.3d 715, 724, 729 (9th Cir. 1998) (CFS) ; Wilson v.
14 Comm'r, 303 Fed. Appx. 565, 567 (9th Cir. 2008) (fibromyalgia and CFS); Smolen, 80 F.3d
15 at 1284 (chronic fatigue and pain). Chronic fatigue or CFS is defined as "self-reported
16 persistent or relapsing fatigue lasting six or more consecutive months." Reddick, 157 F.3d
17 at 726 (emphasis in original). Plaintiff in this case regularly reported fatigue and was
18 diagnosed with and treated for CFS by RCRMC physicians.

19     Plaintiff's behavior and comments regarding her pain and fatigue have been
20 consistent throughout the period since the onset date, including at the hearing before the
21 ALJ. (AR 11, 13, 15.) She told the consulting psychiatrists that her pain prevents her from
22 participating in activities (AR 239) and does not allow her to do anything. (AR 240.) She
23 also stated that her activities were limited due to pain (AR 243) and that she cannot sit or
24 stand very long or walk very far. (AR 15, 296.)

25     There also was corroborating lay witness evidence of her pain and fatigue from a
26 friend, Theodore Staack. (AR 110-117, 155-163.) Staack confirmed that Plaintiff suffers
27 from joint pain, muscle spasms, headaches, and inability to sleep. (AR 111, 156.) He
28

indicated that Plaintiff has difficulty lifting, walking, sitting, standing, and kneeling. (AR 115, 161). He also observed that grocery shopping is tiring for her. (AR 161.)

## 2. The ALJ Decision

The test for deciding whether to accept a claimant's subjective symptom testimony turns on whether the claimant produces medical evidence of an impairment that reasonably could be expected to produce the pain or other symptoms alleged. Reddick, 157 F.3d at 722; Smolen, 80 F.3d at 1282; Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); Bunnell, 947 F.2d at 346. The Commissioner may not discredit a claimant's testimony on the severity of symptoms merely because they are unsupported by objective medical evidence. Reddick, 157 F.3d at 722; Bunnell, 947 F.2d at 343, 345. Unless there is evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering "specific, clear and convincing reasons for doing so." Reddick, 157 F.3d at 722; Smolen, 80 F.3d at 1283-84. The ALJ must identify what testimony is not credible and what evidence discredits the testimony. Reddick, 157 F.3d at 722; Smolen, 80 F.3d at 1284.

The ALJ did not dispute the diagnoses of RCRMC rheumatology physicians. In fact, the ALJ accepted that Plaintiff had the severe impairments of fibromyalgia, chronic ear infections, and chronic arthralgia, which could be expected to produce some pain. (AR 34, 38, 39.) The ALJ did not seek further information or testimony from the rheumatology physicians, order any tests, or retain a vocational expert specifically to assess Plaintiff's pain and fatigue, apparently believing that the medical evidence of record and the psychiatric assessments were sufficient to reach a decision. The two consulting psychiatric examiners also accepted the diagnoses of fibromyalgia, chronic fatigue syndrome, carpal tunnel syndrome, and chronic ear infections by the RCRMC physicians without challenge, focusing instead on Plaintiff's depression and past substance abuse. (AR 242, 297.)

The ALJ concluded, however, that the extent, severity, and duration of "the alleged subjective pain and functional limitations and restrictions" was not "fully credible." (AR 39.)

The ALJ determined that Plaintiff was capable of performing her past work as a cashier. (Id.)

Although the ALJ decision briefly describes some of Plaintiff's visits to RCRMC, the ALJ's determination that Plaintiff's pain and fatigue is not disabling consists of only these two paragraphs:

> At the hearing, the claimant's thoughts did not seem to wander and all questions were answered alertly and appropriately. There is no credible evidence of regular usage of strong medication to alleviate pain that would significantly impair the claimant's ability to do basic work activities. There was no evidence in the medical record of any significant side effects.
>
> Although the claimant indicated that she was able to perform only very limited daily activities, the great weight of the evidence showed that she was at least capable of performing activities such as shopping for groceries, preparing food, doing chores, and sitting outside and watching traffic (Exhibit 9F). The claimant noted that she managed money. She told an examining physician in 2006 that she was able to take care of household chores, cook, go to the store, run errands, attend sobriety meetings, perform self care and personal hygiene, handle cash and pay bills appropriately, walk with friends, talk with friends on the phone, read, play cards, and watch television (Exhibit 3F). The claimant was also able to work part-time as a caregiver for 5 or 6 months in 2005. Furthermore, an examining psychiatrist noted that the claimant appeared to significantly embellish symptomatology of the present illness (Exhibit 9F).

(AR 38-39.)

Based on the above analysis, the ALJ concluded that, although Plaintiff had medical impairments that could be expected to produce some pain, Plaintiff's testimony and evidence was not "fully credible" regarding the severity of her pain. (AR 39.)

11

### 3. Plaintiff's Contention That the ALJ Failed To Consider Relevant Medical Evidence Has Merit

Plaintiff contends that the ALJ decision failed to consider or improperly considered the medical evidence of record. The ALJ may not ignore or reject relevant medical evidence without giving specific, legitimate reasons for doing so. Smolen, 80 F.3d at 1282; Reddick, 157 F.3d at 722-23 (impermissible for ALJ to develop evidentiary basis by "not fully accounting for the context of materials or all parts of the testimony and reports"); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (ALJ "cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result"). In particular, in determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including medical records, lay evidence, and the effects of symptoms, including pain reasonably attributable to the medical condition. Robbins, 466 F.3d at 883.

There is merit to Plaintiffs' contention that the ALJ failed to consider or improperly considered relevant evidence as to her pain and fatigue. The ALJ decision also mischaracterizes the record evidence of pain and fatigue.

First, the ALJ decision inexplicably acknowledges and accepts only Plaintiff's fibromyalgia and arthralgia as severe medical impairments. (AR 34.) It does not acknowledge Plaintiff's chronic fatigue syndrome, chronic pain, and parasthesia discussed and accepted by the RCRMC physicians and consulting psychiatrists. No explanation is given for the deletions. The ALJ's determination that Plaintiff was "not fully credible" was in reference only to pain. (AR 39.)[1] It was not in reference to Plaintiff's fatigue, which was not discussed, or to other omitted conditions. The ALJ's evaluation of functional capacity,

---

[1] The ALJ stated, "Thus, although the Claimant does have a medically determined impairment which could be expected to produce some pain, because the Claimant's allegations of disability due to pain are based primarily on subjective symptoms, her credibility is a material factor. The Claimant's testimony and evidence, although appearing sincere, is not fully credible regarding the extent, intensity and duration of the alleged subjective pain and function limitations and restrictions for the reasons stated above. (AR 39 (emphasis added).)

because it ignored fatigue, was in legal error. Reddick, 157 F.2d at 724 (failure to consider fatigue in RFC analysis); Robbins, 466 F.3d at 883 (ALJ required to consider all symptoms).

Second, there also is no indication that the ALJ considered whether the Claimant's combination of impairments, especially the omitted ones, were severe enough to be disabling. A claimant's illnesses "must be considered in combination and must not be fragmentized in evaluating their effects." Beecher v. Heckler, 756 F.2d 693, 694-95 (9th Cir. 1985) (quoting Dressel v. California, 558 F.2d 504, 508 (8th Cir. 1997)). An ALJ must consider the combined effect of all of a claimant's impairments on his or her ability to function without regard to whether each alone was sufficiently severe. Smolen, 80 F.3d at 1290. By failing to acknowledge important medical conditions that are undisputed, the ALJ did not consider the severity of all impairments in combination in his RFC. This was legal error.

Third, the description of the medical history in the ALJ discussion is incomplete and one-sided. The decision mentions but 8 or 9 visits to RCRMC, some of which concern ear infections and surgery, not Plaintiff's principal complaint regarding pain and fatigue. The ALJ decision only cites evidence that was negative or that was construed negatively. The ALJ decision does not accurately or fairly reflect the medical history regarding pain and fatigue. Claimant visited RCRMC 30 times since 2004 for pain and fatigue, apart from other visits for ear infections and auto accidents. (AR 174-237, 269-91, 301-69.) Nowhere in the medical records did RCRMC rheumatologists suggest that Plaintiff's pain and fatigue were feigned. Twice RCRMC rheumatologists conducted a tender points analysis to confirm their fibromyalgia diagnosis. (AR 281, 292.) Once, an RCRMC rheumatologist conducted a Physical Assessment and recommended rest and no work for six months. (AR 220.) This important medical evidence was never mentioned by the ALJ or by the two psychiatric consultants. A treating physician's diagnosis is entitled to greater weight than that of non-treating physicians. Reddick, 157 F.3d at 725; Smolen, 80 F.3d at 1285. If uncontradicted, the ALJ may not reject the treating doctor's opinion without clear and convincing reasons supported by substantial evidence. Reddick, 157 F.3d at 725. Even if contradicted, the ALJ

may not reject the treating physician's opinion without specific and legitimate reasons supported by substantial evidence. Id. In this case, rheumatology is the relevant specialty. Benecke, 379 F.3d at 594. A specialist's opinion is given greater weight on medical issues related to his or her specialty than a non-specialist. Id.

The ALJ decision does not contain any analysis of fibromyalgia or chronic fatigue syndrome, or the symptoms of each, and does not mention or discuss the RCRMC Physical Assessment. This was legal error. Robbins, 466 F.3d at 883; Smolen, 80 F.3d at 1282 (error to ignore medical evidence); Cotton, 799 F.2d 1408-09 (ALJ cannot disregard undisputed medical evidence without clear and convincing reasons or, if disputed, without specific, legitimate reasons).

The ALJ decision also fails to mention or discuss the third-party lay witness statements from Theodore Staack. (AR 110-117, 155-163.) Staack confirmed Plaintiff's pain and other symptoms and indicated that the pain affected her ability to stand, sit, and walk. (Id., esp. 115, 161.) He specifically noted that grocery shopping was tiring. (AR 161.)

Staack's statements were important evidence. The ALJ's failure to acknowledge or discuss this evidence was legal error. An ALJ must consider lay witness testimony concerning a lay witness' ability to work. Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009); Stout v. Comm'r, 454 F.3d 1050, 1053 (9th Cir. 2006); Smolen, 80 F.3d at 1288-89. It cannot be disregarded without comment. Stout, 454 F.3d at 1053. The ALJ, to reject lay witness testimony, must give reasons germane to each witness. Id. Further, the reasons germane to each witness must be specific. Bruce, 557 F.3d at 1115.

The Commissioner argues (JS 15) that the ALJ's failure to discuss Staack's testimony was harmless error. See Stout, 454 F.3d at 1054-56 (failure to address lay evidence not harmless unless a reviewing court can confidently conclude that no reasonable ALJ on crediting the testimony would reach a different disability determination). Staack's testimony by itself may not be enough to result in a different outcome but, together with the other favorable evidence also not addressed, it certainly cannot be considered harmless.

The ALJ's decision fails to discuss important, relevant medical evidence and does not accurately or fairly present the medical evidence.

Fourth, the ALJ notes that an EMG, or nerve conduction study, was never done. (AR 38.) There certainly can be no expectation that Plaintiff, who is indigent, should pay for an EMG. If the ALJ thought that the record was incomplete, he could have ordered it. In Social Security cases, the ALJ has a special, independent duty to develop the record fully and fairly to assure that the claimant's interests are considered. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001); Smolen, 80 F.3d at 1288; Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). The ALJ has a basic duty to inform himself about facts relevant to his decision. Heckler v. Campbell, 461 U.S. 458, 471 n. 1 (1983) (Brennan, J., concurring). The ALJ's duty to develop the record exists even when the claimant is represented by counsel. Tonapetyan, 242 F.3d at 1150. Thus, it was the ALJ's duty, not Plaintiff's, to develop the record. The ALJ, however, apparently believed that the medical evidence of record was sufficient to reach a decision on the severity of Plaintiff's pain and fatigue without such a study.

### 4. The ALJ Erred In Concluding That Plaintiff's Pain and Fatigue Are Not Disabling

The ALJ is responsible for determining credibility and resolving conflicts in the evidence. Reddick, 157 F.3d at 722. The ALJ's findings, however, must be supported by specific, cogent reasons. Id.

The ALJ's decision proffers four reasons for concluding that Plaintiff's pain and fatigue are not severe enough to be disabling. None of these reasons withstand analysis, constitute clear and convincing evidence, or are legally sufficient to reject Plaintiff's testimony and evidence of pain and fatigue.

First, the ALJ asserts that there is no evidence that Plaintiff's medications significantly impair her ability to work or have resulted in side effects. (AR 38.) The issue, however, is whether Plaintiff's pain and fatigue render her unable to work, not whether her medications do.

Second, the ALJ asserts that Plaintiff's ability to perform household chores is inconsistent with disability. (AR 38-39.) The law in this Circuit makes clear that the ability to perform some household chores does not preclude a finding of disability. Orn, 495 F.3d at 639; Wilson, 303 Fed. Appx. at 567; Reddick, 157 F.3d at 722. In Wilson, the Ninth Circuit stated, "It does not suffice to determine that the claimant is capable of some of the activities of normal life; the ALJ must also demonstrate that 'the ability to perform those daily activities translated into the liability to perform sedentary work.'" Id. (citation omitted). In this case, the ALJ's reliance on sporadic, intermittent household chores is legally inadequate. Sporadic chores and activities, particularly "sitting outside and watching traffic" (AR 38), are not the same thing as a sustained 40 hour work week as a cashier. They do not meet the threshold for transferable work skills. Orn, 495 F.3d at 639.

Third, the ALJ observed that Plaintiff worked for several months as a part-time caregiver in 2005. (AR 39.) The ALJ, however, failed to consider that Plaintiff was compelled to quit that job because of her pain and fatigue (AR 101, 240, 296) or that an RCRMC rheumatologist prescribed rest and no work for six months. (AR 220.) The ALJ, in other words, failed to discuss the most salient evidence establishing disability in his RFC. This was legal error. Robbins, 466 F.3d at 883.

Fourth, the ALJ cites Dr. Jordan's opinion that Plaintiff "appeared to significantly embellish symptomology of the present illness." (AR 39, 295.) Dr. Jordan based his opinion on Dr. Jacobs' finding: "She embellished sxs of present illness." (AR 294.) Dr. Jordan added the word "significantly" (AR 295) but gives no explanation why. He did not explain what symptoms were embellished and never discussed the issue again in his report except in regard to Plaintiff's depression. (AR at 299.) This was legal error. Reddick, 157 F.3d at 722. Moreover, Dr. Jordan's reference to "present illness" was to Plaintiffs' depression, not her pain and fatigue, which he never discusses. He observed that there were no mental health records in the charts to review. (AR 295.) The consultation was ordered because of Plaintiff's alleged worsening of depression. (AR 293.) In his report, Dr. Jordan referred to the "present illness" as depression. (AR 297.) His opinion was that Plaintiff's functioning

16

"did not appear to be impaired by any ongoing psychiatric problems." (AR 299.) Dr. Jordan's report, in other words, does not purport to address whether Plaintiff's pain and fatigue were severe enough to be disabling. Dr. Jordan's report is substantial evidence that Plaintiff's <u>mental</u> impairments are not disabling but it is not substantial evidence as to whether her <u>pain and fatigue</u> are. His opinion is insufficient to establish malingering by Plaintiff as to her pain and fatigue or to support the ALJ's assessment of "not fully credible" as to pain. As already noted, the ALJ's "not fully credible" determination did not even address Plaintiff's fatigue.

The most relevant evidence of the severity of Plaintiff's pain and fatigue is that Plaintiff twice was forced to quit her job (AR 101, 240, 296) and that an RCRMC rheumatologist prescribed rest and no work after a Physical Assessment. (AR 220.) The ALJ does not address, discuss, or dispute this evidence as to Plaintiff's pain and fatigue, or give specific, cogent reasons for rejecting it. Nor does the ALJ give clear and convincing, substantial, or <u>any</u> reasons for rejecting the RCRMC assessment. <u>Smith ex rel. Enge v. Massanari</u>, 139 F. Supp. 2d 1128, 1133 (C.D. Cal. 2001) (reliance on one physician's opinion in making a finding, which differs from that of another physician, is an implicit rejection of the latter); <u>Smolen</u>, 80 F.3d at 1286. This was legal error. <u>Robbins</u>, 466 F.3d at 883; <u>Smolen</u>, 80 F.3d at 1286.

Because pain and fatigue are non-exertional limitations, the ALJ was required to obtain a vocational expert. <u>Wilson</u>, 303 Fed. Appx. at 567. He failed to do so as to Plaintiff's pain and fatigue. As a result, the ALJ's functional assessment is unsupported by substantial evidence.

The ALJ decision does not provide clear and convincing or legally sufficient reasons for rejecting Plaintiff's testimony and evidence regarding the severity of her pain and fatigue, which must be accepted. <u>Benecke</u>, 379 F.3d at 594; <u>Harman</u>, 211 F.3d at 1179.

///

///

///

**DISPOSITION**

The choice of whether to reverse and remand for further administrative proceedings or to reverse and remand for immediate award of benefits is within the discretion of the Court. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Remand is appropriate where additional proceedings would remedy defects in the ALJ's decision, and where the record should be developed more fully. Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990).

Where the record has been developed fully and further administrative proceedings would serve no useful purpose, the case should be remanded for an immediate award of benefits. Benecke, 379 F.3d at 593. More specifically, the Court should credit the evidence rejected by the ALJ and remand for award of benefits if: (1) the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's evidence; (2) there are no outstanding issues to be resolved; and (3) it is clear that the ALJ would be required to find the Claimant disabled if Plaintiff's evidence were credited. Id.

Here, the Court sees no purpose to remanding for further proceedings. Plaintiff's pain and fatigue are not disputed. The ALJ's reasons for rejecting Plaintiff's testimony and evidence regarding the severity of her pain and fatigue are legally inadequate. Her testimony and evidence about the severity of her pain and fatigue, particularly the RCRMC's Physical Assessment, must be accepted. There are no outstanding issues because, if Plaintiff's evidence is credited, the ALJ would be required to find Plaintiff disabled. Therefore, the Court finds that benefits should be awarded.

///
///
///
///
///
///
///

**ORDER**

IT IS HEREBY ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for the immediate payment of benefits.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: November 16, 2009       */s/ John E. McDermott*
                              JOHN E. MCDERMOTT
                              UNITED STATES MAGISTRATE JUDGE